## PAYNE *v*. McDONALD.

### Opinion delivered October 3, 1921.

1. CARRIERS—FRIGHT OF PASSENGER—QUESTION FOR JURY.—Evidence *held* to sustain a submission to the jury of the question whether defendant's train officials permitted a passenger to use violent, insulting and profane language in plaintiff's presence, without taking steps to quell the disturbance, and to make a move as if to draw a pistol, and whether plaintiff was frightened thereby and suffered a miscarriage, and received other personal injuries.

2. PLEADING—AMENDMENT TO CONFORM TO PROOF.—Where evidence tending to prove negligence was introduced, though the complaint only set forth the facts upon which a recovery was sought without incorporating a formal charge of negligence, in the absence of any claim of surprise, the complaint will be treated as amended to conform to the proof.

3. Pleading—motion to make more definite.—In an action against a railroad company for permitting a passenger to use violent and threatening language in plaintiff's presence, causing fright and resulting in a miscarriage, the failure of the complaint to make formal charge of negligence should be reached by a motion to make more definite, and not by a motion to strike out testimony.

4. Appeal and error—ambiguous instruction—specific objection.—Specific objection should be taken to ambiguous language in the court's instructions.

Appeal from Polk Circuit Court; *James S. Steel,* Judge; affirmed.

*J. B. McDonough,* for appellant.

The court should have directed a verdict in favor of defendant. The facts of the case bring it within the rule announced in 135 Ark. 76; 122 Ark. 516; 97 Ark. 24; 32 L. R. A. (N. S.) 529; 111 Ark. 288; 4 R. C. L. 606 to 608.

It would have been a violation of the Interstate Commerce Act to have permitted Wright, the obstreperous passenger, to ride without paying his fare. 34 U. S. St. at L. Sec. 584; Compiled Stat. U. S. 1918, Sec. 8563, par. 5; also a violation of our State law. C. & M. Digest, §§ 848, 850, 917, 919 and 1631.

While the carrier owed a duty to the passenger to protect her, yet its servants did all within their power in a gentlemanly manner to afford such protection, and the judgment should be reversed. 204 S. W. 508; 84 Ark. 194.

*Norwood & Alley,* for appellee.

The issues were fairly submitted to the jury, and the verdict has settled them against defendant, and on appeal such verdict will not be set aside when supported by substantial evidence. 144 Ark. 227; *Id.* 401; 143 Ark. 122; *Id.* 565; 142 Ark. 159; 13 Ark. 474; 12 Ark. 43.

The cases cited by appellant in support of his contention that a verdict should have been directed in its favor, do not support his contention.

Instruction No. 2 was properly given.  122 Ark. 521. Only, a general objection was made to the instruction, whereas appellant should have pointed out his objections and offered what he considered a proper instruction.  71 Ark. 475; 87 Ark. 528; 56 Ark. 594; 69 Ark. 632.

Instruction No. 3 finds support in vol. 2, §§ 580-1-7 White on Personal Injuries on Railroads; 142 Ark. 159; 97 Ark. 28; 55 Ark. 248; 51 Ark. 459.  After a general objection only was made at the trial on appeal, specific objections cannot be pointed out for the first time.  99 Ark. 226.

McCulloch, C. J.  Appellee sued appellant, John Barton Payne, as designated agent of the Kansas City Southern Railway Company, in the circuit court of Polk County, to recover for injuries alleged to have been received while she was a passenger on a train operated on said railroad.  The basis of appellee's claim is that there was a quarrel or controversy in her presence between the train auditors and a passenger, which became so violent that it excited and frightened her, and that she became seriously ill, and, being pregnant, a miscarriage subsequently resulted, as well as ill health, in other respects.  The answer of appellant contained appropriate denials of all the charges contained in the complaint.  On a trial of the issues before a jury, there was a verdict in appellee's favor assessing damages in the sum of five hundred dollars.

One of the contentions made for reversal of the judgment is that the evidence is not sufficient to sustain the verdict.  Appellee took passage on a train at Texarkana *en route* to Grannis, a station in Polk County. She had her four children with her, ranging in age from five to eleven years, and two of her children were placed in a seat across the aisle from her, and the other two occupied the seat with her.  There were two train auditors, Patterson and Whitehead, the latter being a new and inexperienced man, and the former being on duty merely for the purpose of "breaking in" the new man.

There was a stop in the yards at De Queen for the purpose of setting in a new car or setting one out, and during this stop a man named Wright, who was an employee of the railroad in some capacity not shown in the record, boarded the train and entered the coach occupied by appellee. Wright met the two auditors in the aisle immediately in front of the seat occupied by appellee and presented a pass, which was found to have expired, and, on the refusal of the auditors to honor the pass, Wright drew out his union card and presented that to the auditors, claiming the right to free transportation on the faith of his union card. The auditors refused to permit Wright to ride, and the latter became angry and used boisterous language, the extent of which is controverted in the testimony. Appellee in her testimony relates the substance of the occurrence, as follows:

"A. Well, Wright got on the train and wanted Patterson to recognize his pass, and he told him it was out of date, and he couldn't ride on that, and Wright cursed him, and he stood there and let him keep on cursing him and abusing him and used very foul language, and he stood there, I suppose, fifteen or twenty minutes, maybe longer than that, just using that talk over and over until the train started out, and he taken the cash fare from Wright, and let him ride on the train, and he got so abusive until Patterson made an attempt to use a gun right between me and my little children.

Other parts of appellee's examination are as follows:

"Q. Did they pass any licks?" "A. No sir. * * *" "Q. Just state what they did?" "A. Well, they cursed, and just kept cursing and cursing." "Q. Who did?" "A. Wright." "Q. What did Patterson do?" "A. He just stood there and listened at it." "Q. Did he use any abusive language?" "A. No, I don't reckon he did." "Q. What made him start to draw his pistol?" "A. He just told him to hush, and he didn't hush, and he put his hand back in his pocket." "Q. What did you do then?" "A. I don't know what I did do." "Q. Was he close to you

when he started to shoot?" "A. Yes, sir; right at my arm." "Q. Did he make any effort to get Wright to leave the train?" "A. He just told him to get off, and he didn't do it, and he just kept standing there listening at him."

On cross-examination of appellee, the following occurred: "Q. Wright was the man that did the swearing and cursing?" "Yes, sir." "Q. You didn't hear either of the other two men swear or curse?" "A. No, sir." "Q. They didn't swear any at all?" "A. No, sir; they didn't swear." "Q. They didn't use any language of any kind in the way of insulting language?" "A. Not any profanity of any kind; just told him to get off, that he didn't want to fight dogs."

Appellee testified further concerning her fright and excitement and illness which immediately ensued and resulted in a miscarriage. The two auditors were introduced as witnesses, and each testified that they used no improper language nor made any attempt to draw a pistol, and that they were not negligent in any respect. The substance of their testimony is that when Wright presented his pass and union card, which were refused, he became obstreperous and they called the conductor, who required him to pay his fare in money, and that this ended the controversy.

We are of the opinion that the evidence was legally sufficient to warrant a submission of the issues to the jury. *Hines* v. *Rice*, 142 Ark. 159. The evidence justified a finding that Wright became obstreperous and used violent, insulting and profane language, and that the auditors, instead of quelling the disturbance and taking steps to have him ejected, negligently permitted the passenger to continue his conduct for an unreasonable length of time, and even participated in it by making a move as if to draw a pistol, and in replying to the invitation to fight by saying "they did not want to fight dogs." There is also sufficient evidence that appellee's injuries, both physical and mental, resulted from the fright, which was caused by her critical condition of pregnancy.

It is next contended very earnestly that the court erred in refusing to exclude all of the testimony of appellee which related to the conduct of Wright, the contention being that the allegations of the complaint are not sufficient to charge negligence of the train auditors in failing to repress the obstreperous conduct of Wright or cause his ejection from the train. The second paragraph of the complaint, which is the one setting forth the acts upon which recovery is sought, reads in part as follows:

"Plaintiff alleges that on the said 6th day of December, 1919, she was a passenger on one of the passenger trains of defendant, the same being known as passenger train No. 2, north-bound, and had with her four little children of her own, and that as the train was leaving De Queen, the auditor, whose name is Patterson, began taking up tickets, and approached a man named Wright for his ticket, and the said auditor and this man Wright became engaged in a dispute and almost a fight; that they cursed and abused each other in the presence of this plaintiff and in the aisle in the coach immediately between where this plaintiff was sitting and her two little children, who were seated across the aisle from her, and in this difficulty the auditor attempted to draw a pistol from his pocket, as if to shoot the man Wright, and it is the act of the auditor, together with the insulting and abusive language used by the participants engaged in this dispute, so unnerved and excited plaintiff that she became ill as a result thereof. * * *"

There was no demurrer to the complaint, and the question of the effect and sufficiency of the complaint was raised for the first time after the examination of appellee as a witness had been about completed, and a motion was made to strike out all the testimony which related to the conduct of Wright. The complaint only sets forth the facts upon which recovery is sought, without incorporating a formal charge of negligence. If it was thought that the complaint was insufficient, an objection ought to

have been made before the trial commenced. The complaint stated a cause of action, even if imperfectly so; and, if objection was raised, it should have been to make more definite and certain. Appellant's counsel cross-examined the appellee at length before making the motion to strike out the testimony, and when the motion was overruled there was no claim of surprise on account of the omission from the complaint of any specific charge of negligence with respect to the failure of the auditors to stop Wright's improper conduct. The ruling of the court was tantamount to treating the complaint as amended to conform to the proof, and, since appellant was not placed at a disadvantage by surprise, no prejudice resulted from the ruling.

The court gave the following instruction, the giving of which is assigned as error:

"In this case, if you find from the evidence that plaintiff was a passenger on the train of defendant at the time and place alleged, with her children seated across the aisle of the train from her, and that a dispute arose between the auditor of defendant and another party in the aisle and near plaintiff and her children, and that abusive or profane language was used in the dispute or difficulty, and that the auditor acted as though he was going to draw a pistol and fire on the opposing party, and you find that plaintiff became excited and scared because of this trouble, and the acts and disputes of the participants, and as a result of her becoming excited and scared, if you so find from the evidence, she suffered a miscarriage and experienced pain and suffering and injury to her health, and you so find from the evidence, you will find for plaintiff, and assess her damages at such sum as you believe from the evidence she has been damaged, not to exceed the amount sued for, provided you find the same was caused by the negligent acts of defendant or its employees."

The grounds of objection stated to the court at the time were that the evidence was insufficient to justify a

submission of the issues to the jury, and that there was no allegation in the complaint concerning the negligence of the auditors in failing to protect the appellee as a passenger, from the conduct of Wright. There were these specific objections to the instruction, but there was no objection made on the ground that the instruction did not properly submit to the jury the question of negligence of the train auditors in their conduct toward the obstreperous passenger. The instruction, it must be conceded, is not very aptly phrased, but the concluding portion of it does submit to the jury the question whether or not the conduct of the train auditors constituted negligence. If the instruction was ambiguous in its terms, there ought to have been a specific objection to it. It is too late now to criticise the instruction on account of ambiguity in its language. A specific objection, therefore, was essential in order to raise the objections now urged against it.

The same may be said with reference to the objections now made that the use of the words "dispute or difficulty" was improper. If those words were inappropriate in view of the testimony, a specific objection ought to have been made to their use.

There are other assignments of error to the rulings of the court in giving and refusing instructions, but we are of the opinion that the issues were properly submitted, and that there was no error in that respect. Nor is there any error in any other respect.

Judgment affirmed.